24-27-10, O'Leary v. The City of New York. Mr. Snyder, whenever you're ready. Thank you. Good morning. Kevin Snyder for Plaintiff's Appellants. Matthew O'Leary. May it please the Court. I will attempt to reserve two minutes this morning. There are a number of points raised in the briefs, and they all merit this Court's attention, but for purposes this morning, I would like to focus on two items. One is the determination, the proper test for the determination of general applicability in a free exercise claim. And the second is this Court's determination in Kane 1 and Kane 2 that a 1983 free exercise claim can be grounded in the government's improper conclusion about a plaintiff's religious beliefs. Starting with the first issue on determining general applicability, there are two ways that that can be determined. One is the secular comparator. This is your second argument, right? In the briefs, yes. I'm trying to understand exactly what it is that you're arguing. Is it some kind of as-applied challenge, or is it a facial one to the constitutionality of the mandate? It is an as-applied challenge. You say that it's an as-applied challenge, but it seems like what you're saying is because there's an individualized assessment made as to sincerity with respect to your client, it's unconstitutional. But the fact that there's an individualized assessment is in the nature of the policy as a whole. And so it feels and I'm interested in your response, but it feels like what you're really doing is making a facial challenge that's been foreclosed by Kane, but sort of framing it as an as-applied challenge. And it's hard for me to see it really as an as-applied challenge, but I'd like to hear your argument. A facial challenge would be to the text of the mandate itself. An applied challenge would be how the protocol, the system that the protocol is used in. And so that's how we're going with an as-applied challenge. We're not challenging the text of the mandate itself. So that's the difference. In other words, the application, the protocol, how it was performed is the applied challenge. So that's how we're basing this. What about that here? Is it the listing of other drugs that your client didn't use that wasn't considered? Or is it something specific like that? What it is is that they asked him, and this is at page 31 of the record attached to the complaint, they asked, they requested information on his nature of the religious objection to the vaccination. This court said in Kane 2 that the city can't deny accommodation because it casts judgment on the nature of the religious objection. And that's at 462 of the Kane opinion. And so we think that that lines up well. If you look at Heather Clark in the Kane opinion, her beliefs that she set forth were very similar to Matthew O'Leary's. Moreover, this court reversed on 12B6 because they said they were casting judgment on the nature of the religious objection. That's actually what they did specifically in this situation. Are you arguing that Kane 2 was wrongly decided? No. We are arguing that this case lines up with this court's decision in Kane 2 as to Heather Clark. And she was a specific person at which the district court denied the, I'm sorry, dismissed her claim based on the district court said it dealt with sincerity. The contention there was that her views weren't concordant with the church's teachings or the like. I don't see allegations comparable to that here. What I see you saying here is that they got it wrong as to sincerity but not anything else about how they got it wrong or why they got it wrong or tell me if there are allegations we should look to that would make it parallel to some kind of contention that it wasn't concordant with church doctrine or the like. I believe Her Honor is looking at Kane 1. I see. And this is Kane 2. And so in Kane 2 this court said you're looking at the religious nature of the objections you can't do that. And that if you look again at page 31 of the complaint, the first question asked by the evaluators was the nature of the religious objection. With that I have two minutes. You have two minutes after that. The second argument that you were going to start with has to do with the general applicability. Yes. So can you explain that? Is it that any time there's discretion by an official to determine sincerity that makes a process subject to scrutiny? No. What our position is is that there has to be particularized questions and there has to be particularized questions and they have discretion to accept or deny the exemption request. Why isn't that exactly what happened here? That is what happened here and we believe that's why it's not a generally applicable review. Isn't there always discretion? What kind of process for religious commendation would not involve some discretion? So this court referred to the case of Stormins in the 9th Circuit and that was a case where they said there were some very objective criteria and that had to do with pharmacies and what have you. Whether or not someone could pay or not. Whether or not the pharmacist to fulfill a prescription saw fraud or something like that. Those are very objective straightforward questions. Here we have a great discretion to look at the particularized reasons, the nature of the exemptions request. Anything just on that? What's wrong with that? Because this court has said that when you do that you, inciting Fulton, that that is a generalized, that is not a rule of general applicability and goes to strict scrutiny. I'm sorry. May it please the court, Lauren O'Brien on behalf of the City of New York. Here O'Leary's only claim on appeal appears to be based on his argument that the citywide panel mistakenly found that he lacked a sincere religious basis for objecting to vaccination. But that argument is foreclosed by this court's recent decisions in Kane 1 and Kane 2 as well as We the Patriots. There this court established that all iterations of the vaccine mandate were neutral and generally applicable and that the city's exemption policy did not favor secular conduct over religious conduct. It seems like we have some law that says that certain bases for determining sincerity are off the table, right? Like a determination that the views aren't aligned with church doctrine or the like. Certainly. And I guess my question is, how do we know here on this record what the basis for the determination of insincerity was? Do you know? So here it doesn't appear to be disputed that the determination was that he lacked a sincere objective. But I guess the question is why? So in Kane 1, he lacked the sincere objection because the expressed views didn't align with church teachings. It's not clear here. There don't appear to be any specific allegations to that effect and I think that is what distinguishes this case from the case of Heather Clark that he referred to in which this court looked to the analysis to determine whether the city-wide panel had engaged in improper reasoning or relied on an improper factor to deny her exemption request. Here there don't appear to be any allegations to that effect. It appears to just be an argument based on his allegation that his request was sincere and the city found otherwise and so he should be able to proceed. But that is just... How is a city official who is superintending this process supposed to determine whether someone's beliefs are sincere enough? How do you do that? So the city officials reviewing accommodation requests can look to EEOC guidance on this topic. Can look to, I'm sorry. EEOC guidance and standards under Title 7 and pursuant to EEOC guidance, the city officials can look to whether the applicant simply applied their own statement or they've applied statements from sort of third parties or witnesses who can sort of corroborate whether they've discussed sort of past instances where they've followed the practice that they've sort of expressed their following. There are sort of a number of different factors. I think that there was a box checked where it said that he didn't use, that he didn't state that there were medicines that he used for the same reasons, but in fact he said in his letters that there were. And so that seems to be a problem. So I don't, first of all I would say that he doesn't state in his letters that there were, and to the extent that he does it's very vague. He doesn't talk about specific instances in the past where his beliefs have prevented him from taking particular medications or vaccinations. And again, the... Again, I guess I want to get to the justification. And maybe your point is we just don't have allegations to this effect, but if the city were saying, you know, your claim about this with respect to other vaccinations is too vague or nonspecific, okay, then that would be, I think, a legitimate basis for assessing lack of sincerity or at least undermining a claim for sincerity. But I just don't, we don't really have, we don't have anything other than the conclusion. Right, and it's sort of, regardless of what he alleges that he or what's in the record about what was provided, the fact is this court said that a plaintiff needs to allege something more than just conclusory allegations that the city got it wrong or that the city's determination was pretextual. And here there isn't even a theory advanced or any allegations advanced. The theory is just that it was wrong. Just that it was wrong. That he even says that it was mistaken in his brief without really providing any reasoning to that effect. And that clearly under Kang, too, that is insufficient. So the city can be mistaken and wrong about sincerity, but that without more isn't grounds for a conclusion of racial discrimination. Just a bare allegation to that effect is insufficient. I understand your friend's second argument to be that under Fulton there's a second category for something not being generally applicable, which is if it invites discretion, which seems to be his challenge to the process here that there's discretion. You can't even precisely tell us why they denied his application. So that then would subject the regime to strict scrutiny. What's wrong with that argument? So Fulton, I would say, is easily distinguishable from this case. There was a system of exemptions that was completely discretionary. There were no standards applied and it was within the sole discretion of the commissioner whether to grant an exemption to an otherwise. So it's the amount of discretion? So here you've got ten questions and Fulton you didn't? So I would actually say here there's no discretion. Here there's a set of standards that are being applied. The question is whether someone has a sincerely held religious belief that conflicts with the vaccine requirement. If the answer is yes, an accommodation must be granted. There is no discretion as to whether an accommodation can be granted once those standards are met. And it's just sort of like a yes or no question. And once the standards are met, an accommodation has to be granted. There are no allegations that that standard was applied only sporadically. I think there was a free-flowing conversation after the ten questions about following up on some of the questions. Clearly there's some involvement other than just a check box. I think that that goes to whether the city officials were able to exercise judgment in making factual determinations. But that isn't indicative that there was discretion in whether to apply the standards, the legal standards. Isn't the determination of sincerity a discretionary call? You're saying you're distinguishing between that as a factual determination? I am distinguishing that as a factual determination. And there is always whenever there is an objectively defined category or an objectively defined exemption process, there is always a factual determination that needs to be made about whether somebody falls within that category. So two people could have been on that call and disagreed about whether Mr. O'Leary had a sincere basis for his request. True? They could have reached different conclusions based on judgment. But the fact that there's judgment involved. That seems a little bit counterintuitive. I think it's a pretty clear distinction between what was going on or the type of thing that's being addressed in Fulton. If it isn't, then every factual determination of sincerity and I suppose anything else in other contexts by the city would be subject to an overview by the federal courts? If a conversation or an assessment of sincerity could factually go either way, I suppose, but the claim is just that they got it wrong, then the upshot of that would be I think your argument is the upshot of that would be that every factual determination would be open to federal court review. Is that the contention? Right. I mean, I think if I'm understanding your question correctly, if any sort of factual determination involved in determining whether somebody falls within a category that is sort of set to receive exemptions, if that counts as this individualized system of exemptions that is discussed in Fulton, then that would subject every exemption process to strict scrutiny, which... What are we to look at in this case to determine whether the city official correctly concluded no sincerity? What are we to look at? So here I think the point is the burden is on the plaintiff to say something other than just the city got it wrong. The plaintiff could point to the city's process in other cases, could point to the city's process, could point to the standards that were applied by the city. That's what happened in Cain 1. They talked about a specific standard that was applied that this court said was constitutionally suspect. But he doesn't know why he was rejected. To him, we take at face value, he believes what he said in his letters, and so he doesn't know why it was denied. So he knows that it was denied because he was bound to not have a sincere religious objection to vaccination. That is the reason it was denied. He's free to sort of raise other allegations about anything about the process or the questions that were asked to support his allegation, but here he just relies solely on... Today, the city official simply said he was not sincere. Help me understand how we are to review that because ultimately that's a conclusion which is in the person's head. It is a credibility determination and it's a factual determination. That doesn't mean it's completely unreviewable, but... Help me understand what a... How a credibility determination can properly map onto someone's religious beliefs. Well, I would point... And I may believe that, you know, scholar tanagers are sacred birds. I would point to some of the cases that he... How am I to... Who's to gainsay that? I believe it. So this court, I'll just emphasize, this court has said that the question of whether religious belief is sincere is something that the city can properly engage in when deciding whether to grant an accommodation. So just because... I'm sure they have the authority to do it, but what I'm confused about is the process, the standards. I would have a difficult time proving that scholar tanagers were sacred birds. I mean, I suppose if a week before Judge Parker had eaten scholar tanagers, it would undermine the... Factually undermine the sincerity of that belief. Absolutely. Absolutely, yes. And here, I mean, here we can see that there was an extensive process that was followed. He was invited to apply for an accommodation and to submit materials in support of his accommodation. Not only did the city review those materials, but it reached out with additional questions going towards the sincerity of his religious belief, asking about prior instances of refusing medication and vaccination. And then he was also given the opportunity to appeal that to a citywide panel. So to the extent it's a question about process, I think the process was extensive here. But I would just point to, I think we noted this in our brief, point to some of the cases that he relies on for support, in which this court said here there was extensive, voluminous, subjective and objective indicia of reliability of his request. And that was sort of relevant to the court's determination, whereas here we just have a one and a half page letter that was submitted that was sort of general information and then not much else was provided in response to follow-up questions that were asked and then in an appeal to the citywide panel. So I think that what's in the record in this case is far different from those prior cases. But again, I just want to emphasize it's the plaintiff's burden to provide something more than just a conclusory allegation that the determination was incorrect. And he didn't do so here. Thank you, counsel. Thank you. We ask this court to adjourn. Just briefly. Before you start, Mr. Chairman, just one area that we hadn't covered. This is a Monell claim, right? The city's the only defendant. It's a Monell claim. So what is the policy and practice that your allegations are attacking? In the complaint there was a number of paragraphs plus there were attachments that talked about a process and a policy to review these things and the application of that policy and process resulted in the denial of the free exercise. So is it the application of the policy and process or is it the policy and process that is the target of the allegation? The policy and process is the problem and how it's applied is also the problem. So if it's a policy and process that's applied, then I think we're talking about a facial challenge, right? I'm still good at respectfully assert that facial challenges are the face of the text whereas applied challenges are as things are worked out. If I ask it, this court put its finger on credibility determinations. Courts across this country, all the circuits including this one, are finding that sincerity is not the proper properly adjudicated through summary judgment. I would say if that was the case much less through 12b-6 and if it's not even proper under 12b-6 certainly not by a city's 15 minute phone interview. And this court said in Lefevre that the sincerity, you have to have you can't just do it on the papers. You have to have a direct and cross examination. What happened here was the court the district court, I'm sorry, the city and then later the district court are deciding this on the pleadings. To say that these pleadings are conclusory is not an accurate view of the record. He actually Mr. O'Leary submitted about a dozen pages mostly single spaced explicating his religious beliefs. And so we don't believe those are conclusory allegations. And I believe that the city's position is that once this panel, it's evaluators make a determination on sincerity that that is adjudicated for all times and all places. We don't believe that's the law. We believe it can be challenged in federal court. Is there any sincerity determination that would be permissible in your view? Yes. What would it look like? I think if a person for example, vaccination, if they base it on pro-life positions but they are a financial supporter of abortion clinics that would show that they're insincere. They probably just don't like this vaccine because they're afraid of it. But they're really not pro-life. That may not be the best of... And so if that person were denied, what would the allegations in their complaint look like? Well, my position with that person they would have a tough go of it because... Well, what if they just said, I have a sincerely held religious belief. It was determined not to be sincere. Therefore, I was discriminated on the basis of religion. Would that be sufficient? I think they have to... In this case, I think they would have to put forward significant detail in the complaint either as an exhibit or in the allegations themselves which explain their positions. Before your time is almost up, remind me what relief are you looking for? He's looking for damages. All right. Thank you. Thank you, counsel. Thank you both.